**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re )
) Case No: 19-35116
Donald C. Norton, )
) Chapter: 13
)
Debtor(s). ) Judge: Hon. Janet S. Baer

### NOTICE OF MOTION

TO: See attached service list

PLEASE TAKE NOTICE that on **January 22, 2021**, at **9:30 a.m.**, I will appear before the Honorable Judge Janet S. Baer, or any judge sitting in that judge's place, and present the motion of Toyota Lease Trust for Relief From the Automatic Stay, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password**. The meeting ID for this hearing is **160 731 2971** and the password is **587656**. The meeting ID and password can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

Toyota Lease Trust, by its attorneys

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 6199471
12400 Olive Blvd, Suite 555

St. Louis, Missouri 63141
Phone: (314) 991-0255
Fax: (314) 991-6755
ILBK@BonialPC.com

## **CERTIFICATE OF SERVICE**

I, Wesley T Kozeny, declare under penalty of perjury under the laws of the United States of America that I served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on December 15, 2020.

/s/ Wesley T Kozeny
Wesley T. Kozeny, Esq.

Service List:

**ATTORNEY FOR DEBTOR(S)**                via Clerk's ECF noticing procedures
David M. Siegel
David M. Siegel & Associates
790 Chaddick Dr
Wheeling, IL  60090-6005

**TRUSTEE**                               via Clerk's ECF noticing procedures
Glenn B. Stearns
801 Warrenville Road, Suite 650
Lisle, Illinois 60532

**UST**                                   via Clerk's ECF noticing procedures
Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

**DEBTOR(S)**                             Via USPS, first class mail prepaid
Donald C. Norton
2160 Magenta Lane
Algonquin, IL 60102-5068

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re ) | Case No: 19-35116 |
| Donald C. Norton, ) | Chapter: 13 |
| Debtor(s). ) | Judge: Hon. Janet S. Baer |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW Toyota Lease Trust, its subsidiaries, affiliates, predecessors in interest, successors and/or assigns ("Movant"), through the undersigned counsel, pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014, and states as follows in support of its Motion herein:

*REQUIRED STATEMENT (Form G-4) IS ANNEXED HERETO AND FILED HEREWITH AS REQUIRED BY LOCAL RULE 4001-1*

1. On December 13, 2019, the Debtor, above-named, filed a voluntary petition in Bankruptcy under Title 11, Chapter 13, U.S.C., in the United States Bankruptcy Court, for the Northern District of Illinois.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334 and applicable local rules. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

3. The Debtor, Donald C. Norton, ("Obligor(s)") is indebted to Movant pursuant to a Lease Agreement (the "Debt Obligation"). A copy of the Debt Obligation is attached hereto and incorporated herein as Exhibit A. Movant is entitled to enforce the Debt Obligation.

3521-N-4467

4. As security for repayment of the Debt Obligation the Obligor(s) have pledged certain collateral described as <u>2018 LEXUS RX350, VIN: 2T2BZMCA6JC135643</u> ("Collateral"). A copy of the proof of perfection of Movant's interest is in the Collateral ("Security Interest") is attached hereto and incorporated herein as <u>Exhibit B</u>.

5. The Debt Obligation, a lease, matures 2/1/2022. The Collateral is in the possession of Movant. The purchase option specified in the Debt Obligation at lease end is $28,321.83. The combined value of the lease payments and residual value at lease end is $44,355.07.

6. As of December 07, 2020, the value of the Collateral is $33,200.00 The basis for this value is NADA estimate of value. A copy of said valuation is attached hereto as <u>Exhibit C</u>.

7. The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Debt Obligation (which was assumed pursuant to Section 6.1 of Debtor's confirmed Plan) and that have been missed by the Debtor as of December 07, 2020:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 4 | 09/01/2020 | 12/01/2020 | $939.20 | $3,756.80 |
| Less partial payments (suspense balance): | | | | $0.00 |
| Total: | | | | $3,756.80 |

8. The address to which payments are to be made to Servicer as agent for Movant is:

    Toyota Motor Credit Corporation
    P.O. Box 9490
    Cedar Rapids, Iowa 52409-9490

3521-N-4467

9. Cause exists for relief from the automatic stay under 11 U.S.C. §362(d) for the following reasons:

    a. <u>11 U.S.C. §362(d)(1)</u> - For cause in that payments required to be made by Obligors to Movant are not being made as required by the Debt Obligation and the terms of the confirmed Plan and Debtor has surrendered the Collateral to Movant.

    b. <u>11 U.S.C. §362(d)(2)(A) & (B)</u> - Debtor enjoys no equity in the Collateral (a leased vehicle) and the Collateral is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order:

1. Terminating or modifying the stay imposed by 11 U.S.C. 362(a) allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies in and to the Collateral.

2. That the Order be binding and effective despite any conversion of the bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    4.    For such other relief as the Court deems proper.

Dated: December 15, 2020

    BONIAL & ASSOCIATES, P.C.

    /s/ Wesley T Kozeny
    Wesley T. Kozeny / # 6199471
    12400 Olive Blvd, Suite 555
    St. Louis, Missouri 63141
    Phone: (314) 991-0255
    Fax: (314) 991-6755
    ILBK@BonialPC.com
    Attorney for Toyota Lease Trust

3521-N-4467

Form G-4

# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) __DONALD C. NORTON__   Case No. __19-35116__   Chapter __13__

All Cases: Moving Creditor __TOYOTA MOTOR CREDIT CORPORATION__   Date Case Filed __12/13/2019__

Nature of Relief Sought: ☑ Lift Stay   ☐ Annul Stay   ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed __02/28/2020__

Chapter 7:  ☐ No-Asset Report Filed on _____
            ☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☐ Home
   b. ☑ Car   Year, Make, and Model __2018 LEXUS RX350__
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date  $ __23,480 (lease payments only)__
   Total of all other Liens against Collateral $ __23,480 + residual val.__

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)   $ __35,350__

5. Default
   a. ☐ Pre-Petition Default
      Number of months _____   Amount $ _____

   b. ☑ Post-Petition Default
      i. ☐ On direct payments to the moving creditor
         Number of months __4__   Amount $ __$3,756.80__
      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months _____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i.   ☐ No insurance
      ii.  ☐ Taxes unpaid   Amount $ _____
      iii. ☑ Rapidly depreciating asset
      iv.  ☐ Other (describe) _____

   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
      i.   ☐ Bad Faith (describe) _____
      ii.  ☐ Multiple Filings
      iii. ☑ Other (describe) __vehicle surrendered to Movant and failure to pay per contract__

   d. Debtor's Statement of Intention regarding the Collateral
      i. ☐ Reaffirm   ii ☐ Redeem   iii. ☐ Surrender   iv. ☐ No Statement of Intention Filed

Date: __12/15/2020__                                    __/s/ Wesley T. Kozeny__
                                                        Counsel for Movant

(Rev. 12 /21/09)

# MOTOR VEHICLE LEASE AGREEMENT
## ILLINOIS

**LEXUS FINANCIAL SERVICES**

### 1. Parties

Lease Date: 02/01/2018

**LESSEE AND CO-LESSEE NAME AND LESSEE'S BILLING ADDRESS**
DONALD C NORTON
125 LAKEVIEW DR UNIT 310
Bloomingdale, County of DUPAGE, IL 60108

**LESSOR (DEALER) NAME AND ADDRESS**
HIGGINS ROAD SALES, INC.
350 EAST GOLF ROAD
SCHAUMBURG, IL 60173

**VEHICLE GARAGING ADDRESS**
N/A

This is a Lease for the Vehicle described below. The words "**you**", "**your**" and "**yours**" refer to the Lessee and any Co-Lessee. The words "**we**", "**us**" and "**our**" refer to the Lessor, and after assignment, to the Toyota Lease Trust ("TLT") and any subsequent assignee. Lexus Financial Services, a division of Toyota Motor Credit Corporation ("LFS") will be servicing this Lease on behalf of TLT. By signing this Lease, you agree to lease the Vehicle described below from us under the terms of this Lease, to pay all amounts due and to perform all of your obligations under this Lease.

### 2. Description of Leased Vehicle
You are leasing from us, and have received in satisfactory condition, the following Vehicle:

**Leased Vehicle**
2018 Lexus RX RX 350 AWD

| New, Used, or Demo | Vehicle Identification Number | Primary Use | Odometer Mileage |
|---|---|---|---|
| New | 2T2BZMCA6JC135643 | Personal Family or Household | 119 |

## FEDERAL CONSUMER LEASING ACT SEGREGATED DISCLOSURES

| 3. Amount Due at Lease Signing or Delivery (Itemized in Section 7 below) | 4. Monthly Payments | 5. Other Charges (not part of your Monthly Payment) | 6. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | Your first Monthly Payment of $ 939.20 is due on 02/01/2018, followed by 47 payments of $ 939.20 due on the 1st of each month. | Disposition fee (if you do not purchase the Vehicle) $ 350.00 | |
| $ 1,750.00 | The total of your Monthly Payments is: $ 45,081.60 | Total $ 350.00 | $ 46,242.40 |

### Itemization of Amount Due at Lease Signing or Delivery

**7. Amount Due at Lease Signing or Delivery:**
- a. Capitalized Cost Reduction — $ 810.80
- b. First Monthly Payment — $ 939.20
- c. Refundable Security Deposit — $ N/A
- d. Title Fees — $ N/A
- e. Registration Fees — $ N/A
- f. License Fees — $ N/A
- g. Tax on Capitalized Cost Reduction — $ 0.00
- h. Acquisition Fee — $ N/A
- i. N/A — $ N/A
- j. N/A — $ N/A
- k. N/A — $ N/A
- l. N/A — $ N/A
- m. Total — $ 1,750.00

**8. How the Amount Due at Lease Signing or Delivery will be Paid:**
- a. Net Trade-In Allowance
  - Year 2014 Make Mazda Model CX-9
  - VIN JM3TB3DA4E0446758
  - (i) Agreed Upon Value $ 20,000.00
  - (ii) Less: Pay Off $ 32,708.40
  - (iii) Less: Cash to Lessee $ N/A
  - Net Trade In [(i) — (ii) — (iii), no less than 0] $ 0.00
- b. Rebates and Noncash Credits $ 750.00
- c. N/A — $ N/A
- d. N/A — $ N/A
- e. N/A — $ N/A
- f. Amount to be Paid in Cash $ 1,000.00
- g. Total — $ 1,750.00

# MOTOR VEHICLE LEASE AGREEMENT
# ILLINOIS


LEXUS FINANCIAL SERVICES

## Your Monthly Payment is determined as shown below

### 9. Payment Determination

| | | |
|---|---|---:|
| a. | **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ 53,152.03 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance). For an itemization of this amount, see Section 13. | $ 71,136.43 |
| b. | **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost. | – $ 810.80 |
| c. | **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment. | = $ 70,325.63 |
| d. | **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment. | – $ 28,321.83 |
| e. | **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. | = $ 42,003.80 |
| f. | **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts. | + $ 3,077.76 |
| g. | **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge. | = $ 45,081.56 |
| h. | **Lease Payments.** The number of payments in your Lease. | ÷ 48 |
| i. | **Base Monthly Payment.** | = $ 939.20 |
| j. | **Monthly Sales/Use Tax.** | + $ N/A |
| k. | N/A | + $ N/A |
| l. | **Total Monthly Payment ("Monthly Payment")** | = $ 939.20 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

### 10. Excessive Wear and Use
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 30000 miles over the odometer mileage disclosed on page one, at the rate of $ 0.25 per mile.

### 11. Purchase Option at the End of Lease Term
You have an option to purchase the Vehicle at the end of the Lease Term for   $ 28,321.83
That amount does not include other charges you may be required to pay pursuant to Section 32.

### 12. Other Important Terms
Review this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## Gross Capitalized Cost Itemization and Other Items

### 13. Itemization of Gross Capitalized Cost
You will pay for the following items over the Lease Term, as part of your Monthly Payment:

| | | |
|---|---|---:|
| a. | Agreed Upon Value of the Vehicle | $ 53,152.03 |
| b. | Taxes | + $ 3,336.00 |
| c. | Initial Title, License, and Registration Fees | + $ 120.00 |
| d. | Outstanding Prior Credit or Lease Balance | + $ 12,708.40 |
| e. | Acquisition Fee | + $ 795.00 |
| f. | Electronic Filing Fee | + $ 25.00 |
| g. | Tire and Wheel | + $ 1,000.00 |
| h. | N/A | + $ N/A |
| i. | N/A | + $ N/A |
| j. | N/A | + $ N/A |
| k. | N/A | + $ N/A |
| l. | N/A | + $ N/A |
| m. | N/A | + $ N/A |
| n. | N/A | + $ N/A |
| o. | Gross Capitalized Cost | = $ 71,136.43 |

6305IL (03/10/15)

**MOTOR VEHICLE LEASE AGREEMENT**
**ILLINOIS**



### 14. Lease Term and Scheduled Maturity Date
The Lease Term of this Lease is __48__ months, and the Scheduled Maturity Date of this Lease is __01/31/2022__.

### 15. Required Insurance
You must provide the following insurance during the Lease Term, with the Lessee and/or Co-Lessee as an insured driver. No other types of insurance are required and **no Required Insurance is provided by us in this Lease**:
a) primary automobile liability insurance with minimum limits for bodily injury or death of
  i) $ __25,000.00__ for any one person, and          iii) $ __20,000.00__ for property damage; and
  ii) $ __50,000.00__ for any one accident, and
b) physical damage insurance for the full value of the Vehicle, with a maximum deductible of $1,000.

See Section 24 for more information.

You have provided us today with the following insurance information:

STATE FARM
Insurance Provider
JAY SCHACK JR
Agent's Name
N/A
Agent's Address

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

Insurance Coverage Verification by Dealer Employee _[signature]_

### 16. Charges for Late/Returned Payments
If we do not receive a full Monthly Payment within 10 days after it is due, you must pay a late payment charge of 5% of the unpaid amount or $10, whichever is greater.

If any payment (including an electronic funds transfer) you make to us is not honored or returned to us for any reason, in addition to any late charges, you may be charged a fee of $25, as permitted by law.

### 17. Estimated Official Fees and Taxes
This is an estimate of the total amount you will pay over the Lease Term for official and license fees, registration, title, and taxes (including personal property taxes), whether included in your Total Monthly Payment (Section 9.I), the Amount Due at Lease Signing or Delivery (Section 7) or billed separately. The actual total of Official Fees and Taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. **This estimate is based on your current address and may increase if you move or if tax rates change. You are responsible for paying any increases.** See Section 27 for additional information.

Estimated Total $ __3,556.00__

### 18. Warranty
If the Vehicle is a new or a demo Vehicle, the Vehicle is subject to the standard new warranty from the manufacturer. If the Vehicle is used, it is not covered by a warranty unless identified below:
☐ Remainder of standard new vehicle warranty from manufacturer
☐ Used vehicle warranty from manufacturer
**UNLESS WE MAKE A WRITTEN WARRANTY OR ENTER INTO A SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS LEASE AND EXCEPT AS STATED IN THE PARAGRAPH IMMEDIATELY ABOVE, YOU ARE LEASING THIS VEHICLE "AS IS." THERE ARE NO WARRANTIES AS TO THE VEHICLE'S CONDITION, MERCHANTABILITY, SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.**

True and Accurate Completed Copy - UCC Non-Authoritative Copy

**MOTOR VEHICLE LEASE AGREEMENT**
**ILLINOIS**



### 19. Optional Insurance and Other Products

**You are not required to buy any of the Optional Insurance or Other Products listed below to enter into this Lease, and they are not a factor in our credit decision.** These insurance and other products will not be provided unless the appropriate box is checked, all information is filled in, you sign below, and you are accepted by the Provider. By your signature below, you agree that you have received a notice of the terms of the insurance or product, and you want to obtain the insurance or product for the premium or charge shown. A portion of the premium or charge shown may be retained by the Lessor (Dealer).

☐ **Optional Credit Life Insurance**
Insured(s): N/A / N/A
$ N/A Beginning Coverage
Provider: N/A
$ N/A Premium
Lessee: N/A (B)
Co-Lessee: N/A (B)

☐ **Optional Credit Disability Insurance**
Insured(s): N/A / N/A
$ N/A Maximum Monthly Coverage
Provider: N/A
$ N/A Premium
Lessee: N/A (C)
Co-Lessee: N/A (C)

☐ **Optional Mechanical Breakdown Protection**
Miles/Coverage: N/A    Months: N/A
Provider: N/A
$ N/A Premium or Charge
Lessee: N/A (D)
Co-Lessee: N/A (D)

☐ **Optional Maintenance Agreement**
Provider: N/A
$ N/A Premium or Charge
Lessee: N/A (E)
Co-Lessee: N/A (E)

☐ **Optional Excess Wear and Use Protection Plan**
Provider: N/A
$ N/A Premium or Charge
Lessee: N/A (F)
Co-Lessee: N/A (F)

☒ **Optional Tire and Wheel Protection Plan**
Provider: Lexus/Safe-Guard
$ 1,000.00 Premium or Charge
Lessee: [signature] (G)
Co-Lessee: N/A (G)

Total Premiums and Charges    $ 1,000.00

# MOTOR VEHICLE LEASE AGREEMENT
# ILLINOIS

**LEXUS FINANCIAL SERVICES**

### 20. Complete Agreement or Modification

By your signature, you acknowledge that this Lease contains the entire agreement for the Lease of this Vehicle. There are no other agreements. Any change to this Lease must be in writing, and signed by you and by us.

Lessee: [signature]   Co-Lessee: N/A

## YOUR OBLIGATIONS DURING THIS LEASE

**21. Vehicle Maintenance and Damage**
You are responsible for all maintenance, repair, service, and operating expenses of the Vehicle. You agree to keep the Vehicle in the same condition as when you received it, except for reasonable wear, to maintain the Vehicle so that any warranties or similar agreements remain effective and so that it passes all inspections required by law, to follow the owner's manual and maintenance schedule, and to provide us with written proof of such maintenance. You agree to make the Vehicle available to us for inspection during the Lease Term at any reasonable time and place that we request.

**22. Prohibited Uses of the Vehicle.** You agree that you will not, nor permit others to:
a. use the Vehicle in any illegal manner, in violation of your insurance policy, or without the insurance coverage described in Sections 15 and 24;
b. alter or install any equipment on or in the Vehicle without our written consent. Any accessions to the Vehicle become our property;
c. subject the Vehicle to any lien, seizure or other involuntary transfer;
d. use the Vehicle to transport goods or people for hire;
e. remove the Vehicle from the state where it was first titled, for more than 30 days, without our written consent;
f. take the Vehicle outside the continental United States (except to Canada or Mexico for less than 30 days, if you have our consent and have provided us with proof of insurance);
g. use the Vehicle in a way that causes the cancellation or suspension of any warranty or other similar protection agreement; or
h. allow anyone else to regularly use the Vehicle without our written consent.
**Assigning, subleasing, pledging or permitting a security interest to be created in, or in any other way transferring by you of any interest in the Vehicle or this Lease is strictly prohibited.**

**23. Title and Registration.** Legal title to the Vehicle will be in our name and the Vehicle will be registered as we direct. You must promptly pay all title, registration, and license fees.

**24. Required Insurance.** The limits required under state law may not be sufficient for your needs. See your insurance provider for more information. **You may obtain the required coverages through any insurance company, agent, or broker you choose which is reasonably acceptable to us and authorized to do business in the state where the Vehicle is located.** This insurance may be provided through existing policies that you own or control if it otherwise meets all requirements. The insurance policy must be acceptable to us, name Toyota Lease Trust as **additional insured** and **loss payee**, and give us at least 10 days written notice before any cancellation or reduction in coverage. You authorize us to endorse your name(s) on any check or draft from your insurance company for any claim. You must provide us with written proof of this insurance, including a copy of the insurance policy, at any time during the term of this Lease at our request. You agree to release to us all insurance or other proceeds you receive for damages or loss to the Vehicle (including any premium refunds on the Required Insurance) up to the amount you owe us.

**25. Payment Obligations.** You may not change or stop your Monthly Payments for any reason, even if the Vehicle is stolen, destroyed, seized by the government, non-operative, experiences any mechanical problem, or does not perform satisfactorily. We may apply each Monthly Payment and each other payment we receive to past due payments, current payment due, late charges, and other amounts due under this Lease in any order we choose, to the extent permitted by law.

**26. Change in Address.** You must notify us in writing within 30 days of any change in your address or the address where the Vehicle is garaged.

**27. Fees, Taxes and Fines.** You must promptly pay all official fees and taxes related to the Vehicle and this Lease, including title, license and registration fees, and sales, use, excise and personal property taxes. These amounts may change from time to time based on changes to your address and changes in tax rates. You must also promptly pay all other fees, assessments, charges, costs and fines (collectively "fines") incurred on the Vehicle such as traffic tickets, impounds, towing charges, storage charges and toll violations. Some bills for official fees and taxes may be sent to you for payment. Other bills may be paid by us on your behalf and we will charge you the amount billed to us. If you fail to pay any such amount when billed by us or by a third party, and we elect to pay it, you will reimburse us for the amount paid plus a $10 administrative fee per incident, to the extent permitted by law. In connection with these bills, you give us permission to provide information regarding you and this Lease to the billing authority. You must pay all fees, taxes, assessments, charges, costs and fines incurred on the Vehicle during the Lease Term, even if they are assessed and billed after this Lease has ended. We may charge you an estimated amount for any remaining items at the time this Lease ends. You are responsible for any shortage in this estimate, and we will refund you any excess.

We are not obligated to apply for any refund or abatement of official fees and taxes, including personal property taxes. If you make a written request that we apply for a refund of an official fee or tax that you paid to us, to which you are entitled, we will file an application for refund. We will send any refund we receive, less all amounts due under this Lease, to you.

We may pay any title, registration, license fee, tax, assessment, charge, cost or fine which you fail to pay, and charge you the amount paid. You are responsible for any fines or penalties if you fail to pay the bill when due.

# MOTOR VEHICLE LEASE AGREEMENT
# ILLINOIS



28. **Default and Remedies.** To the extent permitted by law, you will be in default if:
    a. you fail to make any payment when it is due;
    b. you fail to keep any other agreement in this Lease;
    c. you provided false or misleading information when applying for this Lease;
    d. you become the subject of a bankruptcy or insolvency proceeding;
    e. the Vehicle is lost, stolen, seized, confiscated, levied upon, or damaged beyond reasonable repair;
    f. you die and there is no surviving co-lessee; or
    g. you fail to return the Vehicle by the Scheduled Maturity Date and do not obtain our written consent to extend the Lease Term.

    If you are in default, we may do any or all of the following, as permitted by law, after giving any legally required notices, and observing any legally required cure or reinstatement periods:
    i. terminate this Lease and your right to use the Vehicle;
    ii. require you to return the Vehicle by allowing us to pick up the Vehicle or making it available to us at any reasonable time and place we specify;
    iii. take possession of the Vehicle by legal process or by self help in any manner not prohibited by law;
    iv. require you to pay the amounts set forth in Section 29;
    v. take any reasonable action to correct your default or to prevent our loss;
    vi. pursue any other remedy allowed by law; and
    vii. require you to pay all of our expenses for taking these actions and add the amount of our expenses to the amount you owe us under this Lease, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys' fees paid to an attorney who is not our salaried employee, as allowed by applicable law.

    We or our agent may take possession of personal property left in or on the Vehicle, subject to your right to recover such property, if any. We or our agent may store it for you and you will be responsible to pay for this service. If you do not take possession of the personal property, we or our agent may dispose of it as permitted by law.

## ENDING YOUR LEASE

29. **Early Termination by Us.** We may terminate this Lease at any time if you are in default (see Section 28) subject to any right you may have to cure your default. If we do, you must return the Vehicle to us, at any reasonable location we specify. In addition, you must pay us, upon demand, the amounts set forth in Section 28(vii) and the total of the following amounts, to the extent not prohibited by law:
    a. all Monthly Payments that have become due and are unpaid at termination; plus
    b. all official fees and taxes charged in connection with this Lease termination; plus
    c. all out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus
    d. the amount, if any, by which the "Adjusted Lease Balance" exceeds the "Fair Market Value" (as such terms are defined below); plus
    e. all other amounts then due under this Lease, but not including charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); minus
    f. any remaining Refundable Security Deposit (Section 36) or refund we receive from Optional Insurance or Other Products (Section 38).

    The "Adjusted Lease Balance" is calculated by adding the Base Monthly Payments whose scheduled due dates are after the date of termination and the Residual Value, then subtracting the unearned portion of the Rent Charge. The unearned portion of the Rent Charge is calculated according to the "constant yield" method.

    The "Fair Market Value," if not established by agreement or appraisal as described below, is equal to the price we receive when we dispose of the Vehicle at wholesale. The Fair Market Value may also be determined by our mutual agreement or by an appraisal of the wholesale value of the Vehicle, which you may obtain, at your own expense, from a professional independent appraiser agreed to by us. If you obtain such an appraisal and the appraisal is provided to us within 10 days after the Vehicle is returned to us, the appraised value will be final and binding on both you and us and will be used as the Fair Market Value. If the Vehicle is subject to damage or theft resulting in a total loss, in each case as we determine, the Fair Market Value will equal the amount of any insurance proceeds we receive from your Required Insurance. If there are no insurance proceeds the Fair Market Value will be zero.

30. **Early Termination by You.** If you are not in default, you may terminate this Lease at any time prior to the end of this Lease.

    If you terminate this Lease early and do not elect to purchase the Vehicle in accordance with Section 32, you must return the Vehicle to us, at any reasonable location we specify, and you must pay us, upon demand, either the total of the amounts due under Section 29 or the total of the following amounts, whichever is less, to the extent not prohibited by law:
    a. all Monthly Payments that have become due and are unpaid at termination; plus
    b. all remaining Monthly Payments from the date of termination to the scheduled end of this Lease, unless Section 31 is applicable to this Lease; plus
    c. all official fees and taxes charged in connection with this Lease termination; plus
    d. all out of pocket costs paid by us for the sale of the Vehicle, including costs for transporting, storing, preparing for sale, and auctioning the Vehicle; plus
    e. all other amounts then due under this Lease, including all charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); minus
    f. any remaining Refundable Security Deposit (Section 36), or refund we receive from Optional Insurance or Other Products (Section 38).

31. **Total Loss or Theft.** If the Vehicle is subject to damage or theft resulting in a total loss, and you have maintained the Required Insurance set forth in Section 15, we will waive the Early Termination charge set forth in Section 29(d), after we receive the insurance proceeds and you have paid any deductible amounts.

# MOTOR VEHICLE LEASE AGREEMENT
# ILLINOIS



32. **Your Option to Purchase the Vehicle.** You may purchase the Vehicle at any time during this Lease or at the Scheduled Maturity Date (unless a governmental agency has seized the Vehicle and instructed us not to release the Vehicle to you). The price to purchase the Vehicle at the Scheduled Maturity Date is the Purchase Option Price shown in Section 11, plus, the amounts described in subsections 32(a), 32(b) and 32(c), below. The price to purchase the Vehicle during the Lease Term is the total of:
   a. all unpaid Monthly Payments that have become due, and other amounts due and unpaid under this Lease, except the disposition fee shown in Section 5 and charges for Excessive Wear and Use and excess mileage (Sections 10 and 34); plus,
   b. all official fees and taxes, and documentary fees charged in connection with the purchase; plus,
   c. all amounts necessary to meet any legal selling requirements; plus,
   d. the Adjusted Lease Balance as defined in Section 29.

   As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor and Lessee are hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in any agreement for the sale of the Vehicle at Lease termination.

33. **Obligations if You Do Not Purchase the Vehicle at the Scheduled Maturity Date.** At the Scheduled Maturity Date, you must return the Vehicle to us at any reasonable location we specify, and pay us, upon demand, the following amounts:
   a. all Monthly Payments and other amounts due under this Lease, including the disposition fee shown in Section 5; plus
   b. all official fees and taxes charged in connection with this Lease termination; plus
   c. all Excessive Wear and Use charges described in Section 34; plus
   d. all excess mileage charges disclosed in Section 10. You will not receive a refund if you do not use all of the mileage set forth in Section 10.

   If you keep possession of the Vehicle past the Scheduled Maturity Date, you agree to continue to pay the Monthly Payments. However, continued payment does not cure any default, including a default under Section 28(g), and does not permit you to keep the Vehicle unless you obtain our advance written consent to extend the Lease Term. You agree to pay us any damages we suffer because you failed to return the Vehicle at the end of this Lease.

34. **Excessive Wear and Use Charges.** If you do not purchase the Vehicle at any time during this Lease or at the Scheduled Maturity Date, or if you elect to terminate this Lease pursuant to the terms of this Lease and except to the extent paid by the Excess Wear and Use Protection Plan; if you purchased and received that Plan, you are responsible for the estimated cost to repair damage (including diagnostic cost, if any) to the Vehicle which is excessive wear and use (even if we do not repair the Vehicle).
   Excessive wear and use may include but is not limited to certain damage such as:
   a. inoperative mechanical and electrical parts;
   b. damage (including but not limited to, damage to the engine) due to your failure to maintain the Vehicle pursuant to the terms of this Lease;
   c. damage to the body, lights, trim or paint;
   d. damaged, broken or missing glass;
   e. torn, damaged or stained interior;
   f. damage from flood, water, hail or sand;
   g. damage from removal of equipment or signs placed on the Vehicle;
   h. missing equipment, parts and accessories, including missing keys or remote entry devices; or
   i. any wear or damage to any part of the tire that doesn't allow the tire to meet the manufacturer's guidelines for safe operation, or any mismatched tire sizes in a set of 5 (or 4 with any emergency spare if the Vehicle was equipped with one).

## ADDITIONAL INFORMATION

35. **Communication Consent.** You agree that we, LFS and any affiliates, agents and service providers or any assignees of the foregoing (individually and collectively, as applicable in this Communications Consent section, "we," "our" or "us") may call you, leave you a voice, prerecorded or artificial voice message or send you a text, email or other electronic message for any purpose related to your Accounts with us, our products and services, or surveys or research (each a "Communication"). We may include your personal information in a Communication and conduct a Communication using an automated dialing system and any contact information we have for you, including a cell phone number. We will not charge you for a Communication but your service provider may do so. You understand and agree, we may always communicate with you in any manner permissible by law that does not require your consent.

36. **Refundable Security Deposit.** Your security deposit may be used by us to pay amounts that you owe under this Lease. If you elect to purchase your Vehicle, your security deposit may be applied by us to the amount you owe to purchase your Vehicle. Any unused security deposit will be returned to you at the end of the Lease Term. No interest, increase, or profits will be paid to you on the security deposit, unless required by law.

37. **Assignment.** We can assign our interest in this Lease and in the Vehicle without your consent. After you sign this Lease, we will assign it to TLT and you agree to make all payments to TMCC as servicer for TLT.

38. **Refund of Optional Insurance or Other Products.** If any optional insurance or product included in the Gross Capitalized Cost is cancelled before the end of the Lease Term, or if you are not accepted by the Provider for a requested optional insurance or product, we will credit any refunds to your account.

39. **Indemnity.** You agree to indemnify us from, and to pay on our behalf, any claim or loss (including damages, costs, expenses and legal fees) which arises from or is related to the possession, condition, use, maintenance or operation of the Vehicle. Any insurance we provide is secondary to the Required Insurance.

40. **Credit Information.** You authorize us, at any time, to investigate any information provided on your credit application in order to establish, maintain and collect on this Lease account, including to order one or more credit reports in connection with establishing, maintaining or collecting this Lease account. You authorize us to provide information concerning your account to credit reporting agencies and others who may lawfully receive such information. You may notify us if you believe that we have reported any inaccurate information about your Lease account to a consumer reporting agency. Send your written notice describing the specific inaccuracies to us at the following address: P.O. Box 9786, Cedar Rapids, IA 52409-9786.

**MOTOR VEHICLE LEASE AGREEMENT**
**ILLINOIS**



41. **Liability.** Lessee and Co-Lessee are jointly and severally liable. If there is both a Lessee and Co-Lessee signing this Lease, we can release, waive, or delay the enforcement of our rights against one of you, without affecting our rights as to the other one(s).

42. **Notices.** All Lessee and Co-Lessee correspondence and notices will be sent to the Lessee's Billing Address shown on this Lease, unless you give us a different address. All correspondence and notices will be given solely in LFS' name as the servicer, and will be given on behalf of TLT.

43. **Choice of Law and Severability.** You agree that the law of the state in which this Lease is signed applies to this Lease unless prohibited by law. If certain provisions of this Lease violate the law, those provisions will be void, and the rest of this Lease will be enforceable.

44. **No Waiver by Us.** If we delay or refrain from exercising our rights or remedies under this Lease, we do not lose those rights or remedies. If we accept late or partial payments from you, we do not waive our right to receive full and timely payments. We may accept payments with "Payment in Full," similar language or other restrictive endorsements without being bound by such language or waiving our rights or remedies.

45. **Odometer Disclosure Statement.** Federal law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an Odometer Disclosure Statement, failure to return it to us, or making a false statement therein, may result in fines and/or imprisonment. You will be provided an Odometer Disclosure Statement to complete prior to the termination of this Lease.

46. **True Lease; Security Interest.** You and we intend that this Lease for all purposes constitutes a "true lease" of the Vehicle, and not a "financed lease" or a secured transaction under the laws of any state. However, if for some reason a court or arbitrator determines that this Lease constitutes a "financed lease" or a secured transaction, you grant us a security interest at that time, to the extent permitted by law, in the Vehicle including any property now or later installed in or affixed to the Vehicle, in all proceeds derived from the Vehicle, in your security deposit, in the proceeds of any insurance relating to persons or property and the proceeds of all optional products, including return of unearned premiums and unearned charges.

47. **Electronic Records and Signatures and Conversion to Paper.** You agree to use electronic records and electronic signatures to document this contract. Your electronic signatures will have the same effect as signatures on a paper contract.

    There will be one authoritative copy of this contract. It will be the electronic copy in a document management system we designate for storing it. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper.

**NOTICE**
**ANY HOLDER OF THIS CONSUMER LEASE IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH (1) THE LESSEE COULD ASSERT AGAINST THE LESSOR OF THE VEHICLE LEASED PURSUANT HERETO AND (2) ARE APPARENT ON THE FACE OF THE CONSUMER LEASE. RECOVERY BY THE LESSEE SHALL NOT EXCEED AMOUNTS PAID BY THE LESSEE HEREUNDER.**

**ARBITRATION**

48. **Arbitration Provision.** You agree that any claims arising from or relating to this Lease or related agreements or relationships, including the validity, enforceability, arbitrability or scope of this Provision, at your or our election, are subject to arbitration. This includes, without limitation, claims in contract, tort, pursuant to statute, regulation, ordinance or in equity or otherwise, and claims asserted by us against you and by you against us, and the following Covered Parties: Toyota Lease Trust, Toyota Motor Credit Corporation, Lexus Financial Services, Toyota Motor Insurance Services, Inc., and/or any of our or its affiliates and/or any of our or their employees, officers, successors, assigns or against any third party providing any product or service in connection with this Lease. Any arbitration shall be administered by either JAMS (its rules may be obtained at any of its many offices nationwide or online at www.jamsadr.com), or any arbitration provider that either party may choose subject to the other's approval, which may not be unreasonably withheld. The applicable rules of the selected arbitration provider shall govern, except that in the event of any inconsistency between those rules and this Provision, this Provision shall prevail. Such claims shall be resolved in accordance with (i) the Federal Arbitration Act (the "FAA"); (ii) the selected arbitration provider's rules and procedures in effect at the time the claim is filed; and (iii) this Provision. Any arbitration hearing at which you appear shall be conducted at a location that is reasonably convenient to where you live. The Arbitrator shall apply applicable substantive law consistent with the FAA (and not any state law concerning arbitration) and shall award such remedies, if any, that would be available in court if arbitration had not been elected. If you cannot afford to pay and cannot obtain a waiver of the fees charged by the Arbitrator or if you believe that such fees are or will be prohibitively expensive or excessive, we and the Covered Parties will entertain in good faith any reasonable written request by you for us and the Covered Parties to pay or reimburse you for all or part of such fees. In addition, we will pay the selected arbitration provider's fees for all claims under $15,000. For claims above that amount, the selected arbitration provider's fee shall be covered equally by the parties. In the event we prevail, we agree not to seek recovery of our attorneys' fees from you. If you prevail and the Arbitrator awards you an amount higher than our last written settlement offer before the Arbitrator was selected, we will pay you double your attorney's fees and the maximum claim that may be brought in small claims court in the county of your billing address. **We, the Covered Parties and you are prohibited from participating in any type of representative action, including a class action or private attorney general action. We, the Covered Parties and you are also prohibited from seeking any relief on a representative or class basis.** You will not be subject to this Provision for any individual claim brought by you in small claims court or your state's equivalent court, unless such claim is transferred, removed or appealed to a different court. IF ANY PARTY ELECTS ARBITRATION WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE NOR ANY COVERED PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT; TO HAVE A JURY TRIAL ON THAT CLAIM; OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO SUCH CLAIM. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT AS MAY BE PROVIDED IN THE FAA. This Provision will survive your full payment of this Lease; our sale or transfer of this Lease; any repossession of the Vehicle; and your (or our) bankruptcy.

# MOTOR VEHICLE LEASE AGREEMENT
## ILLINOIS

**LEXUS FINANCIAL SERVICES**

By checking the "opt-in" box and signing below, you agree that at the request of either you or us any controversy or claim between you and us shall be determined by neutral binding arbitration under the Federal Arbitration Act (definitions, terms and conditions described in the Arbitration Provision). IF YOU DO NOT WISH TO BE BOUND BY THE ARBITRATION PROVISION, CHECK THE "OPT-OUT" BOX AND SIGN BELOW. By checking a box and signing below, you agree that you have read and received a copy of the Arbitration Provision.

[X] **OPT IN:** You agree to be bound by the Arbitration Provision.
[ ] **OPT OUT:** You do not wish to be bound by the Arbitration Provision.



Lessee: [signature]    Co-Lessee: N/A

## LEASE SIGNATURES AND NOTICES

**PLEASE READ ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS**

By signing below, you acknowledge that: (1) You have read the entire Lease, including all pages; (2) You agree to all of the provisions of this Lease.

**NOTICE TO THE LESSEE:** This is a Lease. You have no ownership rights in the Vehicle unless and until you exercise your option to purchase the Vehicle, if this Lease contains a purchase option. Do not sign this Lease before you read it. Early termination may require you to pay a substantial amount. You are entitled to a completed copy of this Lease when you sign it.

You acknowledge that you have received a completed copy of this Lease.



Lessee: [signature]    Co-Lessee: N/A
Name: DONALD C NORTON    Name: N/A

**Notice Regarding Assignment.** As part of a like-kind exchange program, TMCC has engaged TQI Exchange, LLC ("TQI") as a qualified intermediary. Lessor is hereby notified that TMCC has assigned to TQI its rights (but not its obligations) in agreements to acquire the Vehicle.

**Acceptance and Assignment:** The Lessor hereby accepts this Lease and assigns to the Toyota Lease Trust all rights, title and interest in this Lease and in the Vehicle, and Lessor's rights under any guaranty executed in connection with this Lease, with full powers to Toyota Lease Trust to collect and discharge all obligations related to this Lease, any guaranty, and this assignment.

Lessor: [signature]
Name: HIGGINS ROAD SALES, INC.

EXHIBIT B

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO |
|---|---|---|---|---|---|
| 2T2BZMCA6JC135643 | 2018 | LEXUS | RX | UTILITY | ███████ |

2T2BZMCA6JC135643

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 02/21/18 | 119 | | | 02/01/18 NEW | ORIGINAL |

119

**MAILING ADDRESS**

LEGEND(S)

ACTUAL MILEAGE

TOYOTA LEASE TRUST
PO BOX 105386
ATLANTA GA 30348-5386

**OWNER(S) NAME AND ADDRESS**
TOYOTA LEASE TRUST LSR
DONALD C NORTON LSE
125 LAKEVIEW DR UNIT 310
BLOOMINGDALE IL 60108

**FIRST LIENHOLDER NAME AND ADDRESS**

**SECOND LIENHOLDER NAME AND ADDRESS**

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

_____ By _____ _____ Date _____
Firm Name                       Signature of Authorized Agent

_____ By _____ _____ Date _____
Firm Name                       Signature of Authorized Agent

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ [NO TENTHS]  [ ] 1. The mileage stated is in excess of its mechanical limits.
ODOMETER READING  [ ] 2. The odometer reading is not the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application.*

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

*Jesse White*
JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

**NADA Used Cars/Trucks**

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2018 Lexus RX Utility 4D RX350 AWD 3.5L V6 |
| Region: | Central |
| Period: | December 7, 2020 |
| VIN: | 2T2BZMCA6JC135643 |
| Mileage: | 42,500 |
| Base MSRP: | $44,670 |
| Typically Equipped MSRP: | $56,330 |
| Weight: | 4,387 |



## NADA Used Cars/Trucks Values

| Monthly Trade-In | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Rough | $29,750 | N/A | -$3,200 | **$26,550** |
| Average | $32,100 | N/A | -$3,200 | **$28,900** |
| Clean | $34,050 | N/A | -$3,200 | **$30,850** |
| Clean Loan | $30,650 | N/A | -$3,200 | **$27,450** |
| Clean Retail | $36,800 | N/A | -$3,600 | **$33,200** |

### Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| W/out Blind Spot Monitor [VIN Precision+] | -$175 | -$200 |
| W/out Navigation System [VIN Precision+] | -$550 | -$625 |
| W/out Leather Seats [VIN Precision+] | -$650 | -$725 |
| W/out Power Sunroof [VIN Precision+] | -$600 | -$675 |
| W/out Cooled Front Seats [VIN Precision+] | -$275 | -$300 |
| W/out Driver's Seat Memory [VIN Precision+] | -$125 | -$150 |
| W/out Heated Front Seats [VIN Precision+] | -$425 | -$475 |
| W/out Levinson Stereo [VIN Precision+] | -$400 | -$450 |

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2020 J.D.Power

| Creditor: | Toyota Motor Credit Corporation |
|---|---|
| Debtor: | Norton, Donald |
| Case No.: | 19-35116 |
| Loan No.: | xxx2735 |
| Our File No.: | 3521-N-4467 |
| Collateral: | 2018 Lexus RX350 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 12/4/2020 |
| Initial Due Date: | 3/1/2018 |
| Due Date Change: | |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | $ - | 3/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 3/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 4/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 4/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 5/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 5/4/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 6/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 6/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 7/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 7/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 8/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 8/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 9/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 9/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 10/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 10/5/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 11/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 11/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 12/1/2018 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 12/6/2018 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 1/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 1/4/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 2/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 2/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 3/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 3/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| 3/11/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 4/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| | $ - | 5/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 5/6/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 6/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 6/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 7/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 7/5/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 8/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 8/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 9/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 9/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 10/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 10/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 11/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 11/8/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 12/1/2019 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 12/7/2019 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |

| Date | Payment | Date | Accrued | | Balance | Note |
|---|---|---|---|---|---|---|
| | $ - | 1/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 1/8/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 2/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 2/7/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 3/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 3/6/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 4/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 4/8/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 5/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 5/4/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| 5/8/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 6/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 6/8/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 7/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| 7/8/2020 | $ 939.20 | | | $ - | $ 939.20 | Funds Received |
| | $ - | 8/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| | $ - | 9/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| | $ - | 10/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| | $ - | 11/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| | $ - | 12/1/2020 | $ 939.20 | $ - | $ (939.20) | Payment Accrued |
| **Total:** | **$ 28,176.00** | | $ 31,932.80 | $ - | $ (3,756.80) | |